The next case is number 2012-1023. It has the same caption, POZEN v. PAR PHARMA. But I gather that you are representing, is it ALPHA PHARMA? Good morning, Your Honors. My name is Thomas Parker and I am representing the appellant ALPHA PHARMA. Okay, thank you. Mr. Parker? Your Honor, the issue that is raised on appeal with respect to this portion of the case is whether the district court erred by not finding this case to be exceptional under 35, section 285. Specifically, whether ALPHA PHARMA had met its burden showing that POZEN had no objectionably reasonable basis for asserting 3183 patent against ALPHA PHARMA, giving that ALPHA PHARMA's tablet, a non-multilayer tablet, an admixture, with a sumatriptan and a proxion, a physically blended together to form a homogenous mixture. Well, let me ask you, Mr. Parker, to be sure. Did ALPHA PHARMA, there was an ANDA. Yes, Your Honor. Was there a paragraph 4 certification by ALPHA PHARMA? Yes, there was, Your Honor. So they had no choice but to come into the case, isn't that right? Absolutely, Your Honor. The case was consolidated. And we yielded our time with respect to the issues relating to the invalidity with respect to the 409 and 405 patents to our co-counsels for POZEN, I'm sorry, for DRL and PARA. And so the issue is that they should have withdrawn sooner rather than later? Yes, no, our issue is that with respect to POZEN asserting the 183 patents against us. We're only confined to one patent, the 183 patents. It's our position that POZEN should have never asserted the claim in the first place, the complaint, and certainly not have maintained the action. That's what I'm trying to understand. After the paragraph 4 certification, they have no choice but to respond. Is that right? Before discovery, before anything else? No, Your Honor, they actually have a choice. They do not have to bring an action if they feel an action is not warranted. But how do they know until they have the details of the product? And with the paragraph 4 certification, isn't that an allegation that unless we go through this complex mechanism, we want to use their label? Excellent point, Your Honor. And before they filed a complaint, we made what's called an offer of confidential access. We gave them a full copy of our handout, which lays out in detail exactly what we tell the FDA, the tablet, the architecture of the tablet, and the process. So that is given to them before they file the complaint. In fact… But why did you file the paragraph 4 certification? Because we filed the paragraph 4 certification against the 183 patent because we did not infringe that patent. I was trying to infringe that patent. That was your declaration to the world that you don't infringe that or that the patent is invalid. That's correct. And if they don't show up and sue you, remember, then you go ahead. Well, it will happen exactly right. There are other patents in the case. If they do not sue us… Well, it's not about 183. I think that's what the presiding judge was talking about, is that when you file your hand in your paragraph 4, any patent agency will sue you. Not necessarily. They don't always sue you, depending upon whether… Is that so? You might have to settle it up front. I mean, let's assume that your hand in it is a little section that said, and world please be known that what we're asking permission to make here is not an admixture, it is an admixture as defined in the patent. And you're saying we're not in the patent at all. Right. Well, I suppose your argument is that the patentee has to accept that it's true. Well, with respect to the hand that we filed, it's a verified statement. A statement made under oath and given to a government agency. And so, at least in that sense… In your best belief. Now, take the example of the admixture, because if you are actually an admixture, then you're not covered. But one could differ about whether or not you are an admixture. Well, in the situation that we have here, why we went so far as even to bring it on appeal is this really multifold, is that we are, I mean, when you take two active ingredients, as is being done in our case, and they've taken testimony from the formulators at Alpha Farm. We've given the tablets to them right after, a couple months after the complaint was filed, so they can break and study and do whatever testing is necessary. But when you physically blend two active ingredients together, I mean, it's physically impossible not to formulate anything other than an admixture, because the claims do require a first and second layer. I'm not so much interested in your merits, Mr. Parker, as I am when you get up to June 28th, and the other side is interested in your merits and telephones you to release that voicemail message. Yes, you are. And at that point, as far as I'm concerned, the clock starts ticking. And, listen, I was out in the real world practicing for 20 years. I know people try to set each other up, and that there's a certain amount of polite letters that say, well, why don't you go ahead and do what you're going to do so I don't have to change my position and file a motion. Please go ahead and dismiss this thing so I don't have to file a motion. And at a point, it stops being just papering a file and it becomes reality. Yes, you're right. And tell me about these circumstances. I mean, I looked through your record. I looked at the e-mails. Right. You know, opposing counsel comes back and says, oh, you didn't have to file a motion. I would have acted anyway. Well, here's the problem with that. I mean, we had a trial date set in October, pre-trial order due during September, and the summary judgment deadline was, I believe it was, I think, toward the end of August. And so we had to do something quickly, otherwise we couldn't expect the judge to, I guess, rule on summary judgment within 30 months before trial. We didn't want a DNF position, as well as the pre-trial order being prepared. So the clock was ticking, and at that point, if you felt as though, clearly, that there was no infringement, then just withdraw the claim. It was two and a half months that went by. More than two. Right. And there was very limited response. I mean, as far as the attempt to settle, I mean, there was really no negotiation. The global settlement was on the table. Let me just de-characterize the global settlement, because I need to put that in context. Those discussions, and I was a part of those discussions, had nothing to do with the 183 patent, and I'll tell you why. Early on in this case, when the complaint was filed, we filed an amended answer. And we felt pretty strongly that the claim for the infringement was baseless with respect to 183. So we asserted the antitrust claim, and we laid out the whole reasons as to why we felt the claim was objectively baseless. They moved to dismiss that counterclaim, without saying, by the way, that their claim was reasonable, but saying, look, you're not forced to file, there's no damages, you're not entitled to any relief. But in context, they're honest. So they were well aware of how we felt about that 183 patent. And by the way, that motion was withdrawn without prejudice, because it remained in the docket for close to a year, and discovery was closing, and again, we had to make a choice, do we continue on with this, and then prolong trial, and everything else. So, with the discussion, we'll put that in context. The focus of those discussions was mainly what we call a late-listed patent, which was a patent that posed a list of knowns, trying to negotiate a license, which never materialized. I mean, that was really the basis and gist of the negotiations. The 183 was not a part of those discussions. We didn't need to discuss it, we felt we didn't have to discuss it. Certainly, if we had an appropriate settlement, perhaps that would have been folded in, but that was not the premise of the negotiations. Excuse me. Well, I mean, up to the time of the final claim construction, or given the fact that we don't have a decision here, a written decision, we have a decision that says the motion is denied for the reasons stated in the brief. That's correct. So, we get the reason in the brief, we've got to presume, if he says the motion was denied for the reasons stated in the brief, that it was your adversary's brief and not yours. That's correct, Frank. And so, the adversary's lead argument in the brief is, up until at least the final claim construction, our theory of claim construction for infringement had some legs. I mean, maybe they weren't the strongest legs in the whole world, but they had legs. They were not frivolous. Right. Now, why can't I assume that the judge accepted that view of the law? Well, I mean, I think it's fair to say that the judge accepted that view. If he accepted that view and we're reviewing him for abuse of discretion, up to at least until that time, you don't have a cause of action. We don't have a cause of action. Now, on that theory, if you say, well, they've got a leg to stand up for their claim construction, they can't be frivolous. They can't have been in subjectly bad faith to have brought the case. So, from that day forward, the judge looks at what he's seeing and he says, these parties were duking back and forth with one another. According to your adversary, your side was slowing down and withholding and not coming forward quickly enough to concede your infringement point of view. Right. But what makes this case different? And so the judge mixes it up and says, well, after the time when it was clear that, you know, that both of you couldn't proceed with an infringement claim, they wrapped this up as reasonably soon as people do down in this district. Right. If I assume that that's what the district court said, what's wrong with that? Okay, so as far as I understand the standard of review, that's before us. But here, when we have discretionary. And the judge is there in the trenches. Exactly. But right now, I mean, what he had basically is in essence what you all had in terms of the record, because there was no, you know, it wasn't like a bench trial or anything. But what I think what distinguishes this case among the others that deal with the 285 fees is when you have, you have two things. When you have a file of history, which is so unmistakably clear that admixtures are excluded, and when you have a specification that is unmistakably clear that the invention is a multilayered tablet and it's expressly stated that an admixture is not the invention. In fact, in the file of history, they refer to it as a selection invention. But I don't want to interrupt you, but I'm really having trouble. In that case, your ANDA was incorrect. You filed an ANDA saying we're five, we need to use that label. It's identical in structure and bioefficacy and so on. Yes, but our... And there, meanwhile, the patent's in the orange book. That's right. And so you put all of this together and you say they should not, they should have shut down and not challenged any of this? Well, the distinction is, I mean, our tablet is, I mean, what our, what my client did was exactly, exactly what they said you couldn't do and why this is not the invention. That is, to devise an admixture. Then how can you use the ANDA and the identical label? That's a regulatory question, Your Honor, because the label is... Isn't that what started the whole thing with the Hatch-Waxman provision and the certification? Well, certainly that infers jurisdiction for the courts to hear the case, but as far as the label, the requirement for the label in terms of the tablet... That's not subject matter jurisdiction. Correct, yes, Your Honor. But, I mean, back to the label. The label is really not in terms of, you know, why the FDA... Your Honor, yeah, I mean, what we're saying is why this case is unique, Your Honor, is basically because it shouldn't have been filed in the first place. We shouldn't have had to incur the cost... That's why I keep saying you started it. You know, that's my problem. I agree, but now... That's my problem. But now, there have been many cases where when you file a Q4 certification, that does not require an automatic that you must file a lawsuit. You have to have a reasonable basis, like any other infringement action, to bring the lawsuit. I can't take the case out specifically on point, but that is out there, especially from this particular court. You treat the infringement action like any other conventional action when the decision is made to bring the infringement. And here, the decision that was made was to say, well, we have a claim that requires two layers, substantially all in one, substantially all in the other, and we have a complete admixture, and we have all these disclaims in the file history. Does your adversary disagree to this very day as to whether you have an absolute admixture? Our adversary... Isn't that the answer, yes, they do? I'm glad you raised this point, Your Honor. Our adversary told this court that we are not an admixture, and they went on to put pages in their brief. They told the district court, point blank, that we are an admixture, and therefore, we don't infringe. And we laid that out in our reply brief, and we cite the actual trial transcripts. So they've taken some incredibly contradictory... Well, there's been a lot of the he said, she said in this case. It's on the record case. As Monica pointed out. Absolutely. And the briefing is hardly best friends. It seemed to me that the presiding judge had a very good point, that you make certain representations in your ANDA, and he's able to read those and rely on them. If, indeed, it had a leg to stand on, as I say, with its claims instructions, to say that you were infringing, first literally, and then possibly by equivalence, so long as that potential claim instruction is viable, even though lately we've seen a lot of claim instructions that don't survive in the end. Absolutely. And I agree, Your Honor. In this case, I get down to sort of well into the trial, before you start to say that we're being injured. Right. Your Honor, I just will bring up one case. It's a Martec case, which there the Fed Circuit pointed out, well, look, you had in your file history, you clearly gave up spent. But at the same time, now you're essentially claiming what's infringing is the spent. I may be oversimplifying. But there they looked at the file history and said, you gave it up. There's no other reasonable construction for this. So you're bringing up the action. They affirmed, and the district court did fine under 285, and they affirmed the district court's decision in that respect. And just, I know I only have a few seconds left. I'm sorry. In your brief, you marked your brief confidential. And as I looked at it, it looked to me like, well, you're marking it as confidential. Is stuff that was in your antidote? That would probably be correct, yes. Is the antidote still confidential? There are portions of the antidote that are confidential. But, Your Honor, if you feel, I think a lot of it's been, you know, been. Well, it's hard to know. I mean, when I look at your adversary's brief, I mean, they just all they should have yellow highlighted everything. So it's very hard to know how you write an opinion around such a bold. I think we'll ask both of you after we finish the argument. Absolutely, Your Honor. To take a hard look at what's been marked confidential. Okay. So that when we write an opinion, we can write an opinion. All right. We'll save your rebuttal time, Mr. Parker. I know that we're running over it. Thank you, Judge Newman. I appreciate it. Thank you. Okay. Mr. Hash. Thank you, Your Honors. May it please the Court. The district court did not abuse its discretion in denying Alpha Farm's request for attorney's fees under 35 U.S.C. 285. As a national matter, this is not an exceptional case. Osen's infringement claims had merit from the beginning. Alpha Farm's product is simply not an admixture. Instead, Alpha Farm goes to great lengths to, as we discussed, pre-discussion. Did you pay attention to the district court that it was an admixture? It never got to me. Oh. The serious allegations have been made here by your adversaries. There was an out-of-context statement that was made when there was discussions of Haar and DRL's products with respect to Alpha Farm. That was a misstatement. And because the truth is... Should we know where that is in the record by any chance? Yes. I'm sorry, Your Honor. I can't get to that slide. We can continue and perhaps your colleagues can find... That statement was a mistake. It was a misstatement and was made when a discussion was being made of different products and Alpha Farm's product was no longer at issue in that situation. What did your, I assume, associate, Ms. Davies... She's my partner. Okay. Your partner, Ms. Davies, called in a voicemail saying, we felt like, based on the June 18th order, we felt like infringement is really not a realistic thing. That's the only point I'm interested in from that point forward. At the point that your firm feels that the case is not realistic, what are you going to do? I mean, you've got Rule 11 as a certification and that obligation continues as a practicing lawyer. Once you feel that something's not realistic, what are you going to do? Well, Your Honor, we had had global settlement negotiations going on with Alpha Farm since February, and those negotiations were continuing, and the hope was that we would be able to settle all of the claims and that this would be included within that settlement. And so those negotiations continued through July into August when it became clear that those weren't going to go to fruition, we immediately dismissed the claims. But you don't have a valid cause of accidents to that claim. How can you use it in settlement? In what way did you know you don't have a cause of accident? Well, we didn't file an expert report on the issue, so we weren't planning on asserting a trial, and the plan was just, if we were going to settle the case with Alpha Farm, just to dismiss all of the claims at once in the context of a global settlement of the case. I mean, that's an answer, but in June, you had contact opposing counsel say, we can't go forward. And we had continuing negotiations throughout that period through July into August in efforts to settle the whole case, and when those didn't pan out, we just dismissed the claim in total. When was the case, Monty? Is this the one in three that started out? In September. I'm pained by this hardball. I mean, the thing we said before, the district court's in the trenches, has an opportunity to observe this stuff, sort of sways it for me, but I find it extremely bothersome just based on the record, and I know, as I said to your opponent, I know as a lawyer, you could go back and forth and paper the case. Well, for instance, sir, we had delayed there. The negotiations were so serious through this time that we were delaying expert reports. Alpha Farm had missed multiple deadlines for expert reports because we gave them extra time to work on the expert reports because we thought that they really wanted to settle. As it turned out, they didn't, and we were just the negotiations were continuing. We gave them extension after extension after extension to file their expert reports because we thought we were going to settle the case. That didn't happen. If it were to be the case that a court ruled that your conduct after this telephone call from your partner to the other side saying, sort of all over, if from there on out you were exposed to legal fees, you would argue, wouldn't you, that it would be limited to any money they continued to spend on the infringement issue? Well, yes, and we didn't file an expert report alleging infringement of the law. I'm trying to get at it. It's highly unlikely that anybody spent a whole lot more time worrying about infringement after that telephone call. Exactly, and we didn't file an expert report on the 103 patent anyway, so how at trial were we going to be able to prove infringement of that claim? We were working towards a global settlement, at least we believe we were working towards a global settlement, and for that reason we put off settling the case. We weren't using it as some sort of bargaining chip. We already told them that we didn't feel they infringed. We didn't provide an expert report. It was a very busy time in the case. We had expert reports, expert depositions, and we felt that we were going to settle the case and hoped that we would be able to expose all the claims. Because you didn't give them an infringement report. If they spent legal fees on infringement after the telephone call, they're wasting their money. I'm not sure that would be my position, but certainly. No, it wouldn't be. I was asking because I was just curious. It would seem to me that if your bad conduct is from a day going forward with regard to a specific issue, then they can't run the meter on settlement negotiations and charge that up to you. Right. But how much could they run their meter at all if there's nothing to work against? Right. In addition, as sort of a foundational matter, the Federal Circuit has made it clear that attorneys can only be awarded to the prevailing party in the case. And the Federal Circuit has made it clear that there's only one prevailing party per case. What's clear from the fact of this case is that Posen has prevailed. The only claim that Posen did not prevail upon was the 183 patent. That claim was dismissed. You can only award infringing and then I don't think you'd want an infringer. Can't you have an exceptional case, someone that doesn't actually prevail on the merits of the... That's not the way that I read the case law. And if you look at the Chumby Intel case, that case makes it clear that there can only be one prevailing party per case. Here, there are multiple parties in the case. There are multiple defendants in the case. So you can just willy-nilly, frivolously sue lots of people as long as you prevail on one claim. You're okay? But we didn't prevail on one claim. Here, we prevailed on all the claims and defenses with respect to the 458 and 499 patents. I understand what you're saying. And with respect to the 183 patent, we prevailed on the claims of infringement against PAR and DRL and all the claims, all the defenses that they asserted with respect to invalidity and unenforceability. In this situation, the claims had merit. And when we made the strategic decision not to pursue those claims anymore, we felt that in the context of the situation, in the context of the ongoing negotiations, we moved expeditiously to resolve those claims. Our hope was that we could globally settle the claims. When that was clear, when it became clear that we could not do that, we dismissed the claim. That was well before trial. Any more questions for Mr. Hash? Any more questions? Thank you, Mr. Hash. Thank you, Your Honor. Mr. Perkins, you have a minute or two. Thank you, Your Honor. Your Honor, the citations of the record with respect to the representation made to district court is in the appendix at 638, where they were saying that our product was an admixture. This is Polson's counsel. Where is that? 638. 638? Thank you. Your Honor, just with respect to the negotiations, I mean, they were not as robust and they were not as ongoing as it's being characterized. I think the record would reflect that. In fact, my timeline shows, too, that after we received the call from Polson's counsel concerning that infringement is not a realistic thing to maintain, we sent them on July the 30th a stip of an infringement, a final judgment, and we had an occasion to speak with them on August the 13th. Again, nothing was resolved. No assurances were given as to what they were going to do, what they wanted to do. On August the 23rd, 2010, we had no choice but to file a motion for summary judgment because the deadline was on August the 25th. Now, in fact, on August the 23rd, 2010, we received no comment from our counsel. They said it was in September that it was withdrawn? The parties, I'm sorry, Polson filed the motion for entry of final judgment with the district court on September the 9th, 2010, and then on September 14th, 2010, the court ended the final judgment on infringement. That's the timeline. And so, Your Honor, again, with respect to the negotiations, they centered around getting a license directed to a late patent. That was basically all it was all about, essentially. And with respect to the part in DRL, the fact that they were successful on the 183 patent against them, I don't necessarily believe it's relevant to us because they were not on that particular patent. Okay. Thank you, Mr. Parker. Your Honor, thank you. Your Honor, thank you for your patience. We'll need an extra patent for that.